IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

LARRY L. KOGER,

    Plaintiff,

v.                         CIVIL ACTION NO. 1:13-12030

NORFOLK SOUTHERN RAILWAY
COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant's motion to dismiss for lack of subject matter jurisdiction.  (Doc. # 10).  For reasons expressed more fully below, that motion, having been converted to one for summary judgment, is DENIED.

## Background

Plaintiff, Larry L. Koger, was employed as a conductor for the defendant, Norfolk Southern Railway Company ("NSRC" or "Norfolk Southern").  On July 29, 2007, the locomotive on which plaintiff was working as a conductor derailed when it ran a red signal, causing the locomotive to proceed when it should not have.  According to the allegations in the Complaint, the force of the derailment caused Koger to suffer a severe back injury.  Koger further alleges that, "based on a pervasive and persistent pattern of retaliatory conduct by Norfolk Southern," he was afraid to report his workplace injury.  Complaint ¶ 12.  Despite his fear that his employment would be terminated for doing so,

Koger did report his injury and went to the hospital for treatment.[1]

On August 8, 2007, Norfolk Southern held a hearing to determine Koger's fault in the accident.  At that hearing, Koger testified that he could not see the stop signal before the derailment "because the engine was moving in reverse on curved tracks and his view was blocked by the 'long hood.'" Id. at ¶ 18. However, Darrell Smith, a NSRC supervisor, testified that Koger could have prevented the accident.  Ultimately, NSRC determined that Koger was a responsible party in the derailment and terminated his employment.

Plaintiff appealed his dismissal from service under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.  On January 8, 2008, the Public Law Board issued an Interim Order "directing that [Koger] be returned to service with seniority and other benefits unimpaired".  The Public Law Board issued its Final Order on July 28, 2008.  In its Final Order, the Board found that Koger was partially responsible for the derailment but that his

---

[1] As a result of injuries he allegedly sustained when the train derailed, plaintiff filed a complaint against Norfolk Southern under the Federal Employees Liability Act ("FELA"), 45 U.S.C. § 51.  Trial on the FELA action began on November 17, 2009.  After a five-day trial, the jury returned a verdict finding NSRC at fault and awarded plaintiff damages in the amount of $3,431,026.00.  The jury further found against Norfolk Southern on the issue of contributory negligence, determining that Koger himself was not negligent.  On November 23, 2009, the court entered judgment in plaintiff's favor in the amount of $3,431,026.00.

termination from service was not warranted.  The Public Law Board found that an unpaid suspension from service was a more appropriate sanction and Koger was reinstated to his former position.

In February 2008, Koger filed an administrative complaint with the Occupational Health and Safety Administration ("OSHA") and the Department of Labor alleging that Norfolk Southern retaliated against him for reporting a workplace injury, in violation of Section 20109 of the Federal Rail Safety Act ("FRSA").  After the Department of Labor failed to issue a final decision on Koger's administrative complaint in the time period for doing so, Koger filed his complaint in this court.

Norfolk Southern filed the instant motion to dismiss, contending that, pursuant to the FRSA's election of remedies provision, Koger cannot file suit under the FRSA because he previously challenged his termination in arbitration under the Railway Labor Act.

**Standard of Review**

Norfolk Southern has filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(1), contending that this court is without jurisdiction to consider Koger's FRSA claim.  In support of its motion, NSRC has attached the Declaration of Andrew J. Shepard as an exhibit to it motion.  Likewise, Koger has tendered several exhibits in responding to the motion to

dismiss.  As Norfolk Southern correctly points out, in
determining whether it has subject matter jurisdiction, the court
"may consider evidence outside the pleadings without converting
the proceeding to one for summary judgment."  Richmond,
Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765,
768 (4th Cir. 1991).  However, the issue of consideration of
items extrinsic to the complaint aside, this court has serious
reservations that a Rule 12(b)(1) motion is the proper vehicle to
raise Norfolk Southern's argument with respect to election of
remedies.

Another district court recently considered the propriety of
using a Rule 12(b)(1) motion to challenge the court's
jurisdiction based on an argument that FRSA's election of
remedies provision barred the plaintiff's FRSA claim.  See
Ratledge v. Norfolk Southern Railway Co., No. 1:12-CV-402, 2013
WL 3872793 (E.D. Tenn. July 25, 2013).  As the Ratledge court
explained:

> In this case, the provision of the FRSA at issue
> is in a separate section from the provision that
> confers jurisdiction on federal courts.  Section
> 20109(d)(3) provides,
>
> > With respect to a complaint under paragraph
> > (1) [of subsection (d)], if the Secretary of
> > Labor has not issued a final decision within
> > 210 days after the filing of the complaint
> > and if the delay is not due to the bad faith
> > of the employee, the employee may bring an
> > original action at law or equity for de novo
> > review in the appropriate district court of
> > the United States, which shall have

4

> jurisdiction over such an action without
> regard to the amount in controversy, and
> which action shall, at the request of either
> party to such action, be tried by the court
> with a jury.
>
> Subsection (f), the election of remedies provision
> in controversy here, states "[a]n employee may not seek
> protection under both this section and another
> provision of law for the same allegedly unlawful act of
> the railroad carrier." Whereas subsection (d)(3)
> clearly relates to a court's jurisdiction, subsection
> (f) does not invoke jurisdictional language. Courts
> and litigants are duly instructed that, for instance, a
> court lacks jurisdiction over a claim in the Secretary
> of Labor issued a final decision within 210 days after
> the employee filed his complaint. Courts and
> litigants, however, are not duly instructed that an
> employee's separate action or invocation of another
> provision of law for the same act constitutes a
> jurisdictional bar to suit in federal court.

Id. at *5. The Ratledge court ultimately decided that Norfolk

Southern should have moved for dismissal pursuant to Rule

12(b)(6) and, accordingly, did not consider a declaration

attached to the motion to dismiss. See id. at *7.

In the instant case, however, the facts necessary to resolve

NSRC's election of remedies argument do not appear in the

complaint. Finding it necessary to consider matters outside the

pleadings and agreeing with the Ratledge court that Norfolk

Southern's election of remedies argument does not speak to the

jurisdiction of this court to consider Koger's FRSA claim, the

motion to dismiss is converted to one for summary judgment.[2]

---

[2] Even were the court to agree with Norfolk Southern that
its motion is properly brought as one to dismiss for lack of
subject matter jurisdiction, in such cases a "district court

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and
> admissions on file, together with the
> affidavits, if any, show that there is
> no genuine issue as to any material fact
> and that the moving party is entitled to
> a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. <u>Id.</u> at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of
> evidence in support of the plaintiff's
> position will be insufficient; there
> must be evidence on which the jury could

_____

should apply the standard applicable to a motion for summary judgment. . . ." <u>Richmond, Fredericksburg & Potomac R.R. Co.</u>, 945 F.2d at 768.

6

> reasonably find for the plaintiff.  The
> judge's inquiry, therefore, unavoidably
> asks whether reasonable jurors could
> find, by a preponderance of the
> evidence, that the plaintiff is entitled
> to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If

the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Id. at 250-51.

### Analysis

Section 20109(f) of the FRSA, entitled "Election of

remedies," provides that "[a]n employee may not seek protection

under both this section and another provision of law for the same

allegedly unlawful act of the railroad carrier."  49 U.S.C. §

20109(f).  According to NSRC, this provision bars Koger from

pursuing a claim under the FRSA because he has already challenged

his termination under the RLA.  This court disagrees.

In a consolidated appeal before the Department of Labor's

Administrative Review Board ("ARB"), the ARB addressed Norfolk

Southern's argument and found in favor of Koger.  See Mercier v.

Union Pacific Railroad and Koger v. Norfolk Southern Railway Co.,

Case Nos. 09-121, 09-101, 2011 WL 4915758 (ARB Sept. 21, 2011)

(hereinafter "Mercier").  According to the ARB,

> In our view, the plain meaning of "another
> provision of law" does not encompass grievances
> filed pursuant to a "collective bargaining
> agreement," which is not "another provision of
> law" but is instead a contractual agreement.
> This understanding is illuminated by language
> used in Section 20109(h), which expressly

7

references "a collective bargaining agreement" in
describing the application of subsection (h).
The fact that a party relies on the law to
enforce a right in a collective bargaining
agreement is not the same as a right created
under a provision of law.  <u>See, e.g.</u>, <u>Graf v.
Elgin, Joliet and Eastern Railway Co.</u>, 697 F.2d
771, 776 (7th Cir. 1983) ("Nor does the fact that
an activity is regulated by a federal statute, as
collective bargaining in the railroad industry is
regulated by the Railway Labor Act, mean that
disputes between private parties engaged in that
activity arise under the statute.").
Consequently, if the parties' election of
remedies defense rests on rights created by a
collective bargaining [agreement], we do not need
to interpret the remainder of the Election of
Remedies provision.

<u>Id.</u> at *5.

Following <u>Mercier</u>, Norfolk Southern's argument has been

rejected by numerous courts.  <u>See, e.g.</u>, <u>Grimes v. BNSF Railway

Co.</u>, 746 F.3d 184, 191 (5th Cir. 2014) (holding that plaintiff's

FRSA claim was not barred by FRSA's election-of-remedies

provision where plaintiff had previously submitted to RLA

arbitration under "the RLA-mandated grievance procedure and

arbitration established in the [collective bargaining

agreement]"); <u>Reed v. Norfolk Southern Railway Co.</u>, 740 F.3d 420,

425 (7th Cir. 2014) ("In sum, although the Railway Labor Act is

indeed a federal statute – and thus, we may assume, another

provision of law – it is strained to say that Reed sought

protection under it by appealing his grievance to the special

adjustment board.  Rather, Reed sought protection under his

collective bargaining agreement.  The plain meaning of the

statute therefore tells us that Reed is not precluded from obtaining relief under FRSA simply because he appealed his grievance to Public Law Board 6394."); <u>Pfeifer v. Union Pacific Railroad Co.</u>, No. 12-CV-2485-JAR-JPO, 2014 WL 2573326, *5 (D. Kan. June 9, 2014) ("[T]he Court finds that the election of remedies provision does not bar Plaintiff's FRSA claim."); <u>Ray v. Union Pacific Railroad Co.</u>, 971 F. Supp. 2d 869, 881 (S.D. Iowa 2013) ("[T]he court agrees with <u>Mercier</u>, <u>Reed</u>, and <u>Ratledge</u> that Plaintiff's FRSA claims are not barred by the election of remedies provision in § 20109(f) merely because he elected to pursue an enforcement action under the RLA for rights that substantively arise under [the] collective bargaining agreement."); <u>Ratledge v. Norfolk Southern Railway Co.</u>, No. 1:12-CV-402, 2013 WL 3872793, *17 (E.D. Tenn. July 25, 2013) ("[T]he Court concludes [Norfolk Southern]'s interpretation of § 20109(f) conflicts with the statutory language, its history and prior iterations, and relevant legislative materials.  Plaintiff did not waive his FRSA retaliation rights when he entered RLA arbitration.").  As the United States Court of Appeals for the Seventh Circuit explained, the plain meaning of 49 U.S.C. § 20109(f) does not support Norfolk Southern's position that Koger's claim is barred by the election of remedies provision found in the FRSA:

> In our view, there is a conceptually simpler way
> to address the question.  For even assuming

arguendo that the Railway Labor Act is "law", it must also be the case that Reed "sought protection under" that law.  Giving those words their plain meaning, we cannot see how he did.

In the first place, the Railway Labor Act "does  not undertake governmental regulation of wages, hours, or working conditions.  Instead it seeks to provide a means by which agreement may be reached with respect to them." Terminal R.R. Ass'n v. Bhd. of R.R. Trainmen, 318 U.S. 1, 6, 63 S. Ct. 420, 87 L. Ed. 571 (1943).  In other words, the Act is entirely agnostic as to the content of any collective bargaining agreement. (Reed's appeal to Public Law Board 6394 is a case in point; as the district court noted, the claim he asserted arose solely from his collective bargaining agreement.)  Likewise, the Act's streamlined arbitration procedures are intended only to "see that disagreement about [working] conditions does not reach the point of . . . threaten[ing] continuity of work, not to remove conditions that threaten the health or safety of workers." Id.; see also Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252, 114 S. Ct. 2239, 129 L. Ed.2d 203 (1994); Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 725-28, 65 S. Ct. 1282, 89 L. Ed. 1886 (1945).

We doubt that a person who arbitrates a grievance based on a private contractual agreement necessarily does so "under" federal law merely because a federal statute requires that the claim be brought before an adjustment board. Cf. Graf v. Elgin, Joliet & Eastern Ry. Co., 697 F.2d 771, 776 (7th Cir. 1983) ("[T]he fact that an activity is regulated by a federal statute, as collective bargaining in the railroad industry is regulated by the Railway Labor Act," does not mean that "disputes between private parties engaged in that activity arise under the statute" for jurisdictional purposes).  But even if we grant that Reed was proceeding under the Railway Labor Act, it seems quite odd to say that he was seeking protection under it.  Again, the Railway Labor Act offers Reed no protection at all; it merely instructs him to bring any grievances that cannot be resolved on-property to a specific

> forum.  By appealing to this forum, Reed did not
> seek protection under the Railway Labor Act any
> more than a litigant seeks protection under the
> jurisdictional statute for the Court of Appeals
> for the Federal Circuit, 28 U.S.C. § 1295, when
> he files an appeal from a final decision of the
> United States Court of Federal Claims.

Reed, 740 F.3d at 423-24 (internal footnotes omitted).  This

court finds the Reed opinion persuasive and agrees with the

analysis contained therein.[3]

For the reasons expressed in the thorough and well-

reasoned authorities cited above, the court finds that Koger's

FRSA claim is not barred by § 20109(f) because he has not

---

[3] The court acknowledges that Reed, Mercier, and the other
cases decided above seem to be decided on slightly different
grounds as some tribunals focus on the "provision of law"
language while others, notably Reed, focus on the "seek
protection under" language.  However, as the Reed court explained
these differences may be more a matter of semantics than
substantive.

> The difference between our approach and the district
> court's may be more terminological than anything.
> Often, arguments designed to show that the Railway
> Labor Act is not "law" can just as easily be used to
> show that it is not the kind of law under which one can
> "seek protection."  See, e.g., Ratledge, 2013 WL
> 3872793, at *14 ("[T]he rights a plaintiff seeks to
> enforce [in the Railway Labor Act process]" are
> "contractual rights . . . [a]nd it is those rights, not
> the RLA, under which the plaintiff sought protection."
> (emphasis added)); Reed, 2013 WL 1791694, at *4
> ("Reed's right to be terminated only for just cause ...
> arises not out of any provision of the RLA, but instead
> out of the collective bargaining agreement.").

Reed, 740 F.3d at 423 n.2.

previously "[sought] protection under another provision of law" for his unlawful termination.

## Conclusion

Based on the foregoing, defendant's motion for summary judgment is DENIED.  The Clerk is directed to send copies of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED** this 19th day of June, 2014.

ENTER:

David A. Faber
Senior United States District Judge